UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Randall D. and Dawn M.
Pelletier

    v.                                    Civil No. 13-cv-69-JL
                                          Opinion No. 2013 DNH 162
U.S. Bank National
Association *et al.*


**MEMORANDUM ORDER**

This appeal from the Bankruptcy Court presents a question about the application of judicial estoppel.  Randall and Dawn Pelletier have appealed an order of that court granting summary judgment against them in their adversary proceeding against U.S. Bank National Association ("the Bank").  The Pelletiers alleged that, while the Bank filed a proof of claim in their bankruptcy based on a note secured by a mortgage against their property, the Bank had failed to establish that it was the holder of the note.[1] But the Bankruptcy Court found that, before the Pelletiers commenced the adversary proceeding, they had executed--and the

---

[1] The adversary proceeding also named Select Portfolio Servicing, Inc. ("SPS") and Mortgage Electronic Systems, Inc. ("MERS").  Neither of those entities, however, filed any proof of claim against the Pelletiers; only the Bank did.  The Bankruptcy Court, then, did not rule on the validity of any claim by SPS or MERS and, moreover, neither party addresses any such claim on appeal.  Thus, while SPS and MERS have been named as respondents on this appeal, this court has not considered any claim against either of them.

court had approved--a stipulation in their bankruptcy case "agreeing, among other things, that [the] Bank is the holder of the note and mortgage." Pelletier v. U.S. Bank Nat'l Ass'n (In re Pelletier), Adv. No. 11-1135 (Bkrtcy. D.N.H. Dec. 21, 2012), slip op. at 3 (Kornriech, B.J.).

Ruling that "[j]udicial estoppel bars [the Pelletiers] from taking a contrary position" in support of their adversary proceeding, the Bankruptcy Court granted summary judgment in favor of the Bank, and against the Pelletiers. Id. The Pelletiers have appealed that order to this court, which has jurisdiction under 28 U.S.C. § 158(a)(1) (appeals from "final judgments, orders and decrees" of the Bankruptcy Court in core proceedings). As fully explained below, this court affirms the ruling of the Bankruptcy Court, because it did not abuse its discretion in applying judicial estoppel to grant summary judgment against the Pelletiers.

I. **Background**

In March 2011, the Pelletiers filed a voluntary petition for bankruptcy protection with the Bankruptcy Court for the District of New Hampshire. In re Pelletier, No. 11-10938 (Bnkrtcy. D.N.H. Mar. 14, 2011). In their subsequent statement of financial affairs, the Pelletiers listed, as the sole item of real property

2

in which they had any interest, a single-family home in Groveton, New Hampshire. Two weeks prior to the Pelletiers' bankruptcy filing, however, the Bank had foreclosed on that property, and gone on to purchase the property at the foreclosure sale. But the Bank had yet to record the foreclosure deed by the time the Pelletiers filed for bankruptcy protection.[2]

In late March 2011, the Pelletiers filed their proposed plan of reorganization with the Bankruptcy Court. Arguing that this plan failed to adequately protect the Bank's interest in the property, and that the property was not essential to any reorganization, the Bank filed a motion for relief from the automatic stay. See 11 U.S.C. § 362. Through this motion, the Bank sought to "foreclose the mortgage and for it or a third party purchaser to . . . evict any persons residing in the property" (capitalization and parenthetical omitted).

---

[2] New Hampshire law treats the recording of the foreclosure deed as necessary to the passage of title. N.H. Rev. Stat. Ann. § 479:26, III. New Hampshire law also prevents a mortgagor from judicially challenging the validity of a foreclosure for the first time after the fact, at least "based on facts which the mortgagor knew or should have known soon enough to permit the filing of a petition [to enjoin the foreclosure] prior to the sale." Murphy v. Fin. Dev. Corp., 126 N.H. 536, 540 (1985). While the court has applied this rule to prevent a mortgagor from challenging a mortgagee's right to foreclose for the first time after the foreclosure sale has already taken place, Calef v. Citibank, N.A., 2013 DNH 023, 8-11, this court need not consider the rule here, since the Bank did not raise it, either in the Bankruptcy Court or to this court on appeal.

3

The Pelletiers filed an objection, arguing, among other things, that the Bank had "failed to establish it is both the holder of the note and mortgage securing the note" and thus "failed to even articulate the necessary elements for the court to grant a motion for relief from stay" (capitalization omitted). The Bankruptcy Court then issued an order directing the parties to "submit a stipulation for adequate protection, separate proposals for adequate protection or a proposed scheduling order with an evidentiary hearing to determine adequate protection." In re Pelletier, No. 11-10938 (Bnkrtcy. D.N.H. May 27, 2011).

In the meantime, the Bank filed a proof of claim stating that the Pelletiers owed it more than $140,000 based on a "mortgage note" secured by the Pelletiers' property. Attached to this filing were a copy of (1) a mortgage on the property in favor of Aegis Lending Corporation, bearing the signatures of the Pelletiers and the date of July 26, 2006, and reciting that it secured a loan evinced by a note signed by the Pelletiers that same date, (2) an adjustable rate note payable to Aegis in the amount of $112,800, also bearing the signatures of the Pelletiers and the date of July 26, 2006, and (3) an "allonge to promissory note" referring to a note of that date in the amount of $112,800, naming Pelletier as the borrower, and identifying the property with the address of the mortgaged premises. This allonge bore an

4

indorsement in blank by Residential Funding Company, LLC, which was the transferee of the note by way of a chain of indorsements made on the face of the note itself.

Through counsel, the parties later executed a document entitled "Stipulation Regarding Motion for Relief from the Automatic Stay," which was filed with the Bankruptcy Court.  This document stated that the Bank and the Pelletiers, "by and through their attorneys, stipulate" to a number of facts, including, in relevant part, that the "Bank is the current holder of the mortgage granted by the [Pelletiers] . . . with respect to [their property] . . . which secures a note in the amount of $112,800 of even date ('Mortgage Loan')."  In the stipulation, the Pelletiers agreed, among other things, to "timely remit post-petition payments under the Mortgage Loan" to SPS, which the stipulation identified "as the present servicer for the Mortgage Loan."  The stipulation further provided that it was "conditioned on the approval by the Bankruptcy Court" and that, once approved, its terms would "continue for the pendency of this [bankruptcy] case or further agreement between the Parties with regard to the amounts due under the Mortgage Loan as approved by the Court" (parenthetical omitted).

Importantly, the stipulation contains nothing purporting to reserve the Pelletiers' right to challenge the Bank's interest

5

in, or entitlement to payments under, the "Mortgage Loan."  Of course, the Pelletiers had first mounted that challenge in their objection to the Bank's motion for relief from the automatic stay--the very motion that the stipulation explicitly addressed.

The day after the stipulation was filed, the Bankruptcy Court approved it by endorsing the proposed order submitted with the stipulation.  In re Pelletier, No. 11-10938 (July 1, 2011).  Nearly two months later, the Pelletiers filed an objection to the Bank's proof of claim, asserting, among other things, that the Bank was not, in fact, the holder of the note and mortgage.  The Pelletiers then commenced an adversary proceeding against the Bank, alleging that the Bank's proof of claim failed to establish that it was the holder of the note and mortgage.  Pelletier v. U.S. Bank Nat'l Ass'n (In re Pelletier), Adv. No. 11-1135 (Bkrtcy. D.N.H. Oct. 26, 2011).  To resolve this dispute, the parties filed cross-motions for summary judgment.

Following a hearing, the Bankruptcy Court issued a written order denying the Pelletiers' motion, and granting the Bank's.  The Bankruptcy Court observed that, "[i]n resolution of a motion for relief from stay filed by [the] Bank in the main [bankruptcy] case, the [Pelletiers] and [the] Bank  executed a stipulation agreeing, among other things, that [the] Bank is the holder of the note and mortgage."  In re Pelletier, slip op. at 3.  Thus,

the Bankruptcy Court ruled, "[j]udicial estoppel bars [the Pelletiers] from asserting a contrary position." Id. (citing Patriot Cinemas, Inc. v. Gen. Cinemas Corp., 834 F.2d 208, 212 (1st Cir. 1987)). This appeal followed.

## II. Standard of review

As noted at the outset, the Pelletiers argue that the Bankruptcy Court erred in ruling that they were judicially estopped from taking the position that the Bank is not the holder of the note and mortgage.[3] The Court of Appeals has explained that "the abuse of discretion standard is appropriate . . . when reviewing a judicial estoppel ruling on a motion for summary judgment." Guay v. Burack, 677 F.3d 10, 15 (1st Cir. 2012). So, in reviewing the Bankruptcy Court's conclusion that the stipulation judicially estopped the Pelletiers from arguing that the Bank was not the holder of the note and mortgage, this court "will not lightly substitute [its] judgment for that of the" Bankruptcy Court, and can disturb the ruling only upon reaching

---

[3]The Pelletiers further argue that the Bank failed to come forward with prima facie evidence that it is the holder of the note and mortgage. The Bank disagrees, and urges this court to affirm the Bankruptcy Court's summary judgment decision on the alternative ground that there was, in fact, no genuine dispute that it held the note and mortgage. This court need not reach that issue, since it affirms the Bankruptcy Court's decision based on its application of judicial estoppel.

"a definite and firm conviction that the [Bankruptcy Court] committed a clear error of judgment." Id. at 16 (quotation marks omitted). As explained fully below, this court discerns no such error in the Bankruptcy Court's application of judicial estoppel against the Pelletiers.

### III. Analysis

"The equitable doctrine of judicial estoppel is ordinarily applied to prevent a litigant from pressing a claim that is inconsistent with a position taken by that litigant either in a prior legal proceeding in an earlier phase of the same proceeding." Id. at 16. The two prerequisites to applying the doctrine are that "[f]irst, the estopping position and the estopped position must be directly inconsistent, that is mutually exclusive," and "[s]econd, the responsible party must have succeeded in persuading a court to accept its prior position." Id. (quotation marks omitted). The Bankruptcy Court acted well within its discretion in finding that both of those conditions were satisfied here.

First, the Pelletiers' stipulation that the "Bank is the current holder of the mortgage granted by [them] . . . with respect to [their property] . . . which secures a note in the amount of $112,800 of even date" is directly inconsistent with

their contention, in support of their adversary proceeding, that the Bank was not in fact the holder of the note and mortgage. The Pelletiers do not argue to the contrary.[4]  Second, when the Bankruptcy Court approved the stipulation by endorsing the proposed order to that effect, the Pelletiers succeeded in convincing the Bankruptcy Court to accept their position that the Bank held the mortgage secured by the note.  Again, the Pelletiers do not argue to the contrary.

Rather than articulating how the Bankruptcy Court erred in finding that the elements of judicial estoppel were satisfied, the Pelletiers make several arguments premised on a fundamental

---

[4]At oral argument before this court, the Pelletiers argued that the stipulation addressed only the Bank's ownership of the mortgage--leaving them free to contest the Bank's ownership of the note.  This argument is forfeited, however, because the Pelletiers did not make it in their brief on appeal to this court, nor, more importantly, to the Bankruptcy Court.  See Redondo Constr. Corp. v. P.R. Highway & Transp. Auth. (In re Redondo Constr. Corp.), 678 F.3d 115, 121 (1st Cir. 2012).  To the contrary, in the Pelletiers' objection to the Bank's summary judgment motion in the adversary proceeding, they described the stipulation as a "non-litigation recitation[] that [the] Bank held their Promissory Note"--while contesting, of course, that such a "recitation" prevented them from arguing to the contrary (emphasis added).  So the Pelletiers cannot reverse course yet again and claim, for the first time at oral argument before this court, that the stipulation was limited to the Bank's ownership of the mortgage.  For what it is worth, this court disagrees with that reading anyway, since, as discussed at oral argument, the stipulation treats the mortgage and note as a single interest defined as "the Mortgage Loan" and requires the Pelletiers to submit payments "under the Mortgage Loan."

misunderstanding of the doctrine.  First, they say that the Bank's interest in the note and mortgage was not--and could not have been--adjudicated by a ruling on its motion for relief from the automatic stay because "[a] hearing on a motion for relief from stay is a summary proceeding."  This argument confuses the doctrines of judicial estoppel and collateral estoppel.

The doctrine of collateral estoppel prevents a party from relitigating an issue that has already been adjudicated by a final judgment against him.  See, e.g., Mihos v. Swift, 358 F.3d 91, 101 (1st Cir. 2004).  The doctrine of judicial estoppel, in contrast, "do[es] not draw directly from the fact of adjudication.  Instead, [it] focus[es] on the fact of inconsistency itself."  18A Charles Alan Wright et al., Federal Practice & Procedure § 4477, at 552 (2d ed. 2002).  Thus, while a party cannot be judicially estopped unless it previously convinced a court to accept its contradictory position, see, e.g., Guay, 677 F.3d at 16, that "acceptance" need not have taken the form of a final adjudication on the merits, see 13 Wright, supra, § 4477, at 551 (stating that, although judicial estoppel can "require[] reliance by a court on a prior inconsistent position," it "has little to do with preclusion by judgment").  As just noted, the Pelletiers do not dispute that, by approving the stipulation, the Bankruptcy Court "accepted" their position

that the Bank held the note and mortgage.  So, while the Pelletiers are correct that a ruling on the Bank's motion for relief from stay would not have collaterally estopped them from litigating the Bank's rights in the note and mortgage, see Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 33 (1st Cir. 1994), that is beside the point here.  The Bankruptcy Court relied on judicial, not collateral, estoppel in granting summary judgment.

Second, the Pelletiers argue that "whether [the] Bank holds the note and mortgage is a legal conclusion to be reached by the court and parties cannot stipulate to legal conclusions."  It is true that courts need not "accept, as controlling, stipulations as to questions of law." TI Fed. Credit Union v. DelBonis, 72 F.3d 921, 929 (1st Cir. 1995).  It does not follow, of course, that courts cannot accept the parties' stipulations as to questions of law (which, in this court's experience, is routine), nor that a party's interest in an instrument like a note or mortgage is the sort of "question of law" as to which a court would likely disregard the litigants' stipulation.  See 83 C.J.S. Stipulations § 26, at 34 (2000) (explaining that, subject to exceptions that do not apply here, "[a]ny matter that involves the individual rights or obligations of the parties . . . may

11

properly be made the subject of a stipulation between them") (footnote omitted).[5]

Here, though, what matters is not the controlling effect of the stipulation qua stipulation, but the judicial estoppel effect of the stipulation. "Judicial estoppel applies to a party's stated position whether it is an expression of intention, a statement of fact, or a legal assertion." Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 34 (1st Cir. 2004) (quotation marks omitted). So the fact that the Pelletiers stated their position that the Bank held the mortgage secured by the note in a stipulation (as opposed to a representation by counsel at a hearing, an argument in a brief, or any of the other myriad ways that litigants give information to a court) is immaterial to the judicial estoppel analysis--as is whether, in the absence of its ruling endorsing the stipulation, the Bankruptcy Court could have properly treated the stipulation as binding. The facts, again, are that (1) through the stipulation, the Pelletiers stated their position that the Bank was the holder of the mortgage secured by the note and (2) through its ruling approving the stipulation, the Bankruptcy Court accepted that

---

[5]In deciding the effect of a stipulation in a case before it, the Supreme Court relied on this volume of the Corpus Juridis Secundum, calling it a "leading legal reference." Christian Legal Soc'y v. Martinez, 130 S. Ct. 2971, 2893 (2010).

position.  No more was necessary for the Bankruptcy Court to conclude that the Pelletiers were judicially estopped from arguing that the Bank did not hold the note and mortgage.[6]

Third, the Pelletiers protest that, when they entered the stipulation to resolve the Bank's motion for relief from the automatic stay, they were not "playing fast and loose with the court[]" nor engaged in "intentional self-contradiction . . . as a means of obtaining unfair advantage," which, as the Court of Appeals has recognized, are the hallmarks of a scenario calling for the application of judicial estoppel.  Patriot Cinemas, 834 F.2d at 212.  But these hallmarks, of course, do not appear when a party first stakes out its position--they appear when, after having convinced a court to accept that position, the party adopts a contradictory stance.  Again, that happened when the Pelletiers, after successfully asking the Bankruptcy Court to endorse their stipulation that the Bank held the mortgage secured by the note, filed an adversary proceeding alleging that the Bank did not hold the mortgage or the note.  It was this about-face that "raise[d] the specter of inconsistent determinations and endanger[ed] the integrity of the judicial process" so as to

---

[6]The foregoing discussion also disposes of the Pelletiers' Orwellian argument that the stipulation was not a "binding litigation stipulation" but a "non-litigation recitation."

13

justify the Bankruptcy Court's use of judicial estoppel. Alternative Sys. Concepts, 374 F.3d at 33.

Contrary to the Pelletiers' suggestion, it was not necessary for the Bankruptcy Court to find that, at the time they executed the stipulation, they harbored the intention to later reverse course in the hope of surprising or otherwise prejudicing the Bank. "A party is not automatically excused from judicial estoppel if the earlier statement was made in good faith." Guay, 677 F.3d at 16 (bracketing and quotation marks omitted). Indeed, it was not even necessary to find that prejudice to the Bank was the <u>effect</u> (intended or not) of the Pelletiers' shift in position, since "unfair advantage is not a formal element of a claim of judicial estoppel."[7] Id. (quotation marks omitted).

Fourth, and finally, the Pelletiers complain that the Bankruptcy Court's application of judicial estoppel cost them "the option to reach a stipulated resolution in a summary proceeding," i.e., the hearing on the Bank's motion for relief

---

[7]It is worth noting, however, that the Pelletiers did obtain an advantage from entering into the stipulation to resolve the Bank's motion for relief from stay. Had that motion been granted, the Bank would have been free to carry through with recording the foreclosure deed and evicting the Pelletiers from the property--a considerably worse deal for them than the one they struck through the stipulation, in which they agreed to "remit post-petition payments under the Mortgage Loan" to SPS for the benefit of the Bank.

from the automatic stay, "without waiving substantive claims." The Pelletiers decry such a result as "contrary to bankruptcy's statutory and procedural schemes, legislative history, case law, and local practice."  Putting aside the fact that the Pelletiers do not identify any statutes, rules, legislative history, or case law in support of this argument, it is nevertheless unavailing. Had the Pelletiers wished to preserve their ability to challenge the Bank's interest in the note and mortgage, they simply could have reserved their right to do so in the stipulation itself.  As the Bankruptcy Court pointed out--and counsel for the Pelletiers conceded--at the summary judgment hearing, they did not do so.

   Moreover, at the time the Pelletiers executed the stipulation, they had already raised a challenge to the Bank's interest in the note (by way of their objection to the motion to stay) and been provided copies of the note and allonge (by way of exhibits to the Bank's proof of claim).  In light of this chronology, the Bankruptcy Court acted well within its discretion in finding that the stipulation, once approved by the Bankruptcy Court, judicially estopped the Pelletiers from arguing that the Bank did not hold the note and mortgage.  Indeed, since the Pelletiers entered into the stipulation to resolve a motion they had previously opposed on the ground that the Bank had not shown its rights in the note and mortgage--by acknowledging that the

Bank was the holder of the mortgage secured by the note and agreeing to make post-petition mortgage payments to the Bank's servicer--the Bankruptcy Court cannot be blamed for viewing the stipulation as, effectively, an abandonment of the Pelletiers' challenge to the Bank's claim.  Of course, "holding a litigant to his stated intention not to pursue certain claims" is one of the recognized functions of the judicial estoppel doctrine.  Patriot Cinemas, 834 F.2d at 214.

### IV.   Conclusion

For the foregoing reasons, the Bankruptcy Court's order in the Pelletiers' adversary proceeding granting summary judgment against them, and in favor of the Bank, is AFFIRMED.  The clerk shall enter judgment here accordingly and close this case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:   November 26, 2013

cc:   Krista E. Atwater, Esq.
      Mary F. Stewart, Esq.
      Megan O'Keefe Manzo, Esq.
      Walter H. Porr, Jr., Esq.
      Lawrence P. Sumski, Esq.
      Geraldine L. Karonis, Esq.